UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA GAZELLA,                           Case No. 13-11099

            Plaintiff,             Lawrence P. Zatkoff
v.                                      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Michael Hluchaniuk
                                        United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 15)**

## I. PROCEDURAL HISTORY

### A. Proceedings in this Court

On March 12, 2013, plaintiff Lisa Gazella filed the instant suit seeking

judicial review of the Commissioner's unfavorable decision disallowing benefits.

(Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District

Judge Lawrence P. Zatkoff referred this matter to the undersigned for the purpose

of reviewing the Commissioner's decision denying plaintiff's claim for

supplemental security income.  (Dkt. 3).  This matter is before the Court on cross-

motions for summary judgment.  (Dkt. 13, 15).

### B. Administrative Proceedings

Plaintiff filed the instant claim for supplemental security income (SSI) on

September 20, 2010, alleging that she became disabled on September 20, 2010. (Dkt. 11-5, Pg ID 178-81). The claim was initially disapproved by the Commissioner on December 2, 2010. (Dkt. 11-3, Pg ID 126). Plaintiff requested a hearing and on November 1, 2011, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Tammy A. Thames, who considered the case de novo. (Dkt. 11-2, Pg ID 75-107). In a decision dated January 12, 2012, the ALJ found that plaintiff was not disabled. (Dkt. 11-2, Pg ID 46-69). Plaintiff requested a review of this decision on February 2, 2012. (Dkt. 11-2, Pg ID 42-45). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on January 30, 2013, denied plaintiff's request for review. (Dkt. 11-2, Pg ID 35-39); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1979 and was 31 years of age on the alleged disability onset date and 32 years old at the time of the administrative hearing. (Dkt. 11-2,

Pg ID 56, 68).  Plaintiff has no past relevant work history.  (Dkt. 11-2, Pg ID 68).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at

step one that plaintiff had not engaged in substantial gainful activity since the

application date.  (Dkt. 11-2, Pg ID 51).  At step two, the ALJ found that

plaintiff's mild degenerative disc disease with residual low back and leg pain,

obesity, major depressive disorder, generalized anxiety disorder and a learning

disorder not otherwise specified were "severe" within the meaning of the second

sequential step.  (*Id.*).  At step three, the ALJ found no evidence that plaintiff's

combination of impairments met or equaled one of the listings in the regulations.

(Dkt. 11-2, Pg ID 51-55).

The ALJ determined that plaintiff has the following residual functional

capacity ("RFC"):

> to perform light work as defined in 20 CFR 416.967(b)
> except she can occasionally lift and/or carry 20 pounds
> as well as frequently lift and/or carry 10 pounds.  She
> can stand and/or walk, with normal breaks, a total of
> about six hours in an eight-hour workday and sit, with
> normal breaks, a total of about six hours in an eight-hour
> workday.  She can occasionally perform climbing of
> ramps and stairs.  She must never climb ladders, ropes or
> scaffolds.  She has the ability to understand, remember,
> and carry out simple instructions and perform s[imple]
> tasks with no production pace work, but rather goal-
> oriented work, meaning no down the line coworker
> depending on her for items.  She must have no more than
> occasional interaction with the public or coworkers.

(Dkt. 11-2, Pg ID 55-68). At step four, the ALJ found that plaintiff had no past relevant work. (Dkt. 11-2, Pg ID 68). At step five, the ALJ denied plaintiff benefits because she could perform a significant number of jobs available in the national economy. (Dkt. 11-2, Pg ID 68-69).

**B.    Plaintiff's Claims of Error**

Plaintiff argues that the ALJ's RFC and accompanying hypothetical question do not accurately portray plaintiff's actual mental impairments. Plaintiff contends that prior to the hearing before the ALJ, her representative requested a psychological consulting examination. In that evaluation, Michael Brady, Ph.D., opined that plaintiff was "markedly" limited in the ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 492). Plaintiff asserts that "marked" is defined on the form as "there is a serious limitation in this area. There is a substantial loss in the ability to effectively function." (Tr. 491). Plaintiff argues, therefore, that she has a substantial loss in her ability to function effectively in responding to usual work situations and changes in a work setting. Plaintiff contends that this factor was also posed in a question to the vocational expert at the hearing:

> Q:    "If a hypothetical claimant were markedly limited, which is defined as the individual cannot usefully perform or sustain the activity as responding to usual work situations and changes in a work setting, would that be work preclusive?

4

> A:    "Yes, I believe that would be because I think if the
>        person wasn't able to handle the changes in a
>        competitive work setting, then that would indicate to me
>        they wouldn't be ready for competitive work."

(Tr. 69-70).  According to plaintiff, the following portion of the ALJ's RFC does not accurately portray plaintiff's mental impairments:  "She has the ability to understand, remember, and carry out simple instructions and perform s[imple] tasks with no production pace work, but rather goal-oriented work, meaning no down the line coworker depending on her for items.  She must have no more than occasional interaction with the public or coworkers."  (Tr. 21).  Plaintiff contends that the ALJ erred in failing to include findings by Dr. Brady that plaintiff was "markedly" limited in her ability to respond appropriately to changes in a routine work setting or provide a viable explanation that articulates why this factor was not included in the RFC.

According to plaintiff, in his narrative Report, Dr. Brady opined that Ms. Gazella appeared to be able to deal with normal workplace stressors appropriately or adaptively.  However, he also indicated that her ability to relate to and interact with coworkers and supervisors is impaired, clarifying that her depression and distress could affect her interpersonal relationships in the workplace.  Dr. Brady further explained that her ability to maintain social composure is poor due to ongoing anxiety and depression, when indicating a "poor" prognosis at the end of

his Report.  (Tr. 492, 497).  Plaintiff argues that the ALJ granted only limited

probative weight to Dr. Brady's opinion, noting that his statements were not

consistent with the medical evidence of record, including his own medical

examination findings.  (Tr. 33).  According to plaintiff, the ALJ explained that

while Dr. Brady noted plaintiff has limitations in her ability to interact with others,

he reported that she is able to interact with her boyfriend and stepmother.  (Tr. 33).

Plaintiff argues that this is not an inconsistency because interaction with loved

ones or relatives is not analogous to interactions within the work-place.  Plaintiff

continues that the ALJ also relied on plaintiff's report that she is able to get along

with authority figures.  Plaintiff argues that this also is not inconsistent because

while plaintiff did report that she able to get along "ok" with authority figures, Ms.

Delaphine Alvarado, plaintiff's friend, stated in her Third-Party Function Report

that the plaintiff's ability to get along with authority figures was "poor."  (Tr. 177,

212).  Plaintiff further argues that if there were any inconsistencies or ambiguities

contained in the psychological evaluation that needed clarification, the ALJ should

have made some effort to obtain a clarification from Dr. Brady before construing

the discrepancy against the plaintiff and denying her claim.  SSR 96-5p states:

"Because treating source evidence (including opinion evidence) is important, if the

evidence does not support a treating source's opinion on any issue reserved to the

Commissioner and the adjudicator cannot ascertain the basis of the opinion from

the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion." *D'Angelo v. Comm'r of Soc. Sec.*, 475 F. Supp.2d 716 (E.D. Mich. 2007). Plaintiff contends that this is a due process issue because the Commissioner is relying on the expertise of a psychologist to perform a psychological examination to determine the nature and extent of plaintiff's emotional problems, and if there is a discrepancy in the expert's report, the ALJ should not summarily construe the report against the claimant. Rather, plaintiff contends that Social Security hearings are non-adversarial in nature, and due process would require the ALJ to recontact Dr. Brady for a clarification of his report rather than taking the opposite approach and dismissing the evidence that favors a disability finding. Plaintiff further argues that, notwithstanding its recent amendment, 20 C.F.R. § 404.1512(e) would require the ALJ to make an effort to recontact a treating source to obtain additional information if the evidence was inadequate to make a determination. Although Dr. Brady was not the treating source in this case, plaintiff asserts that case law from within the Sixth Circuit at that time, in addition to due process, indicates that the same obligation should be extended to any other examining source as well. According to plaintiff, the ALJ in essence merely "threw the baby out with the bath water" due to a perceived conflict in the evidence which, if accurate, would be work-preclusive.

7

Plaintiff further argues that an ALJ is not permitted to substitute her opinion for that of the trained psychologist.  *See Lenon v. Apfel*, 191 F. Supp.2d 968 (W.D. Tenn. 2001).  SSR 96-6p clearly states that "psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  Plaintiff argues that even though Dr. Brady was not a member of the team that made the determination at the DDS level in this case, he was asked by the Agency to perform a psychological examination, and he concluded that plaintiff would not be able to work in a routine setting as the result of her poor ability to maintain social composure due to anxiety and depression.  Plaintiff argues that, in essence, the ALJ agreed that the evidence in the record was not fully sufficient to make a determination as to the nature and extent of plaintiff's emotional problems, and therefore agreed to allow a psychological examination to be performed prior to the hearing.  According to plaintiff, when Dr. Brady found a factor regarding changes in work setting that would be vocationally work-preclusive, this apparently did not comport with the ALJ's theory of non-disability.  The ALJ instead merely found a mental limitation which was not work-preclusive, effectively substituting her judgment for that of an experienced psychologist for Social Security.  Plaintiff thus requests a remand for further proceedings and, if warranted, re-contact with Dr. Brady to clarify his report.

8

Plaintiff also argues that one of the two jobs cited by the vocational expert cannot be performed given the RFC in this case. Because the ALJ concluded that plaintiff has no past, relevant work, the burden shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which plaintiff can perform, her limitations notwithstanding. Plaintiff first argues that the vocational expert did not include the appropriate description for the Dictionary of Occupational Titles (DOT) codes he provided. The two jobs listed by the VE were custodian (DOT Code 323.687-014) and dishwasher (DOT Code of 316.684-014). However, the DOT number given at the hearing for a dishwasher (DOT Code of 316.684-014) actually corresponds to the occupation of deli cutter-slicer. Plaintiff asserts that the ALJ's RFC limited plaintiff to goal-oriented work involving simple instructions and simple tasks, with no production-rate pace work, and no more than occasional interaction with the public or co-workers (Tr. 34-35). Plaintiff argues that these restrictions are inconsistent with both the occupation of deli cutter-slicer and dishwasher. In addition, plaintiff argues that the physical demands for the deli cutter-slicer occupation may involve significant standing, walking, pushing, and/or pulling, with workers typically standing for hours at a time having to lift heavy objects such as pots and kettles, and working near hot ovens and grills. Hazards of the job include slips and falls, cuts, and burns. Furthermore, because the pace can be

9

hectic during peak times, workers must possess the ability to communicate clearly so that orders can be filled correctly. (Dkt. 13-2, pp. 7-8). Notwithstanding the incorrect DOT Code, plaintiff also challenges the RFC finding as it relates to the occupation of dishwasher, which plaintiff asserts calls for medium to heavy level exertion. (*See e.g.*, Dkt. 13-3). Based on the evidence of limitations and the RFC findings, plaintiff asserts that she cannot perform this range of work. (Tr. 34). Plaintiff further argues that given her deficiencies in her ability to maintain social functioning, concentration, persistence, or pace, even if the occupation of dishwasher were to categorically fall within the light range of work, it could not be performed given the RFC's limitations because dishwashers also work as part of a team with servers or dining room personnel, and they are responsible for replenishing the supply of clean dishes, silverware, and glasses for the dining room and/or bar. Plaintiff concludes therefore that the ALJ's RFC of no production pace work, and no down-the-line coworker depending on her for items, is clearly against the description of a dishwasher. Plaintiff also argues that the custodian position cannot be performed when using Dr. Brady's finding that plaintiff is "marked[ly]" limited in her ability to respond appropriately to usual work situations and changes in a routine work setting because the custodian position (as well as any other position) could not be performed. Plaintiff therefore requests a remand for further proceedings pursuant to Sentence Four because,

according to plaintiff, the jobs listed by the vocational expert lack substantial evidence supporting the Commissioner's Decision.

### C.     The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ reasonably discounted Dr. Brady's opinion in reaching her RFC determination. The Commissioner contends that the ALJ's determination of a claimant's RFC is a legal decision rather than a medical one, *see* Social Security Ruling (SSR) SR 96-5p, 1996 WL 374183, at *2, and therefore, the ALJ does not "play doctor" by reviewing the medical evidence and forming an assessment of a claimant's RFC. The Commissioner contends that Dr. Brady, a consultative psychologist who evaluated plaintiff in October 2011, opined that plaintiff's ability to understand, recall, and complete tasks was "a bit impaired," but that she could perform simple tasks with no major limitations. (Tr. 497). Dr. Brady did note, however, that plaintiff would likely struggle with tasks that have multiple steps and increased complexity. (Tr. 497). Dr. Brady also noted that plaintiff appeared able to deal with normal workplace stressors appropriately, but that her ability to relate and interact with others was impaired. (Tr. 497). The Commissioner contends that Dr. Brady responded to a questionnaire concerning plaintiff's ability to do work-related mental activities, and noted that plaintiff's ability to maintain social composure was poor due to ongoing anxiety and depression. (Tr. 492). Dr. Brady opined that, as a result,

11

plaintiff would have marked restrictions on her ability to respond appropriately to usual work situations and changes in a routine work setting. (Tr. 492). The Commissioner argues that the ALJ properly gave Dr. Brady's opinion limited weight because it was not consistent with the medical evidence of record and because Dr. Brady's opinions were internally inconsistent. (Tr. 33). For example, on the questionnaire responses, Dr. Brady opined that plaintiff would have "marked limitations" on her ability to respond appropriately to work situations and changes in a work setting, but on his examination report he listed that plaintiff was able to deal with normal workplace stressors. (Tr. 33, 492, 497). In addition, Dr. Brady inconsistently found that plaintiff would be "able to perform simple tasks with no major limitations," but on the questionnaire, he noted that plaintiff would have "moderate" limitations on her ability to understand, remember, and carry out simple instructions. (Tr. 491, 497). Although Dr. Brady assessed that plaintiff would have poor social composure, he found that she had only moderate limitations on her ability to interact with others. (Tr. 492). Additionally, plaintiff was able to interact with family members, use public transportation, get along with authority figures, and maintain several close friendships, further undermining Dr. Brady's opinion that plaintiff had difficulties interacting with others. (Tr. 197, 200, 495). The Commissioner argues that given the number of inconsistencies between Dr. Brady's examination findings, questionnaire responses, and the

remainder of the record, the ALJ reasonably discounted Dr. Brady's opinion.

The Commissioner also argues, that contrary to plaintiff's assertion that the ALJ erred by considering whether plaintiff could interact with her boyfriend and family members as a reason to discount Dr. Brady's opinion, the regulations direct an ALJ to consider whether a medical opinion is consistent with the record as a whole, 20 C.F.R. § 416.927(c)(4), and plaintiff has not cited any authority prohibiting the ALJ from considering a claimant's ability to interact with family members in weighing a medical opinion.  The Commissioner further asserts that the ALJ properly gave weight to her testimony that she was able to get along "very well" with authority figures, even though her friend noted that her ability to get along with authority figures was "poor," because plaintiff is essentially arguing that her own statements are not fully credible and that her testimony should be discounted.  In any event, the Commissioner contends, plaintiff has not shown that the ALJ's restrictions on plaintiff's ability to interact with others were inconsistent with Dr. Brady's opinion because the ALJ limited plaintiff to no more than occasional interaction with the public or coworkers.  (Tr. 21).  Therefore, the Commissioner concludes, because the ALJ's finding was consistent with Dr. Brady's conclusion that plaintiff would have "moderate" limitations on her ability to interact with the public or coworkers, plaintiff has not identified any reversible error.

13

The Commissioner further argues that the ALJ had no duty to recontact Dr. Brady to get further clarification on his opinion.  According to the Commissioner, the rules "require that we make every reasonable effort to recontact [treating sources] for clarification" when "the bases for such opinions are not clear to us." SSR 96-5p, 1996 WL 374183, at *2.  The Commissioner asserts that plaintiff has not provided any authority that this rule would require an ALJ to recontact consultative, as opposed to treating, physicians.  The Commissioner argues that in any event, the ALJ properly rejected Dr. Brady's opinion because it was inconsistent with his own examination findings and the rest of the evidence—not because the bases of his assessment were unclear.  *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 274 (6th Cir. 2010) (where the treating physician's "opinion was deemed unpersuasive not because its bases were unclear, but because they were not corroborated by objective medical evidence," the ALJ was not required to recontact the treating physician.).  The Commissioner concludes that the ALJ did not err by not recontacting Dr. Brady.

The Commissioner further argues that the ALJ reasonably found that plaintiff could perform a significant number of jobs.  At the hearing, the ALJ asked the vocational expert to assume an individual with plaintiff's vocational background and functional limitations, and the vocational expert testified that such a person could work as a custodian (5,000 jobs in Michigan; 175,000 jobs

nationally) and dishwasher (5,000 jobs in Michigan; 175,000 jobs nationally).  (Tr. 66-67).  The vocational expert also confirmed that his testimony was consistent with the Dictionary of Occupational Titles (DOT) (Tr. 69).  The Commissioner contends that, based on this testimony, the ALJ reasonably found that plaintiff could perform a significant number of jobs in the economy and was thus not disabled.  (Tr. 34-35).

According to the Commissioner, plaintiff argues that the vocational expert's testimony was inconsistent with the DOT because the DOT number for the dishwasher position that the vocational expert cited actually corresponds to a deli cutter-slicer position, and because the DOT describes the dishwasher position as requiring medium to heavy exertion, which would exceed plaintiff's functional capacity.  The Commissioner asserts, however, that plaintiff's counsel failed to question the vocational expert about any inconsistency between his testimony and the DOT during the hearing.  According to the Commissioner, "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p.  This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the *DOT*. The fact that plaintiff's counsel did not do so is not grounds for relief." *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163, 168-69 (6th Cir. 2009) (citation omitted).  The Commissioner argues that because plaintiff

failed to draw the ALJ's attention to any inconsistency between the vocational expert's testimony and the DOT, the ALJ did not err by relying on the vocational expert's testimony that plaintiff could work as a dishwasher. The Commissioner further asserts that even if this Court were to find that plaintiff could not work as a dishwasher, substantial evidence supports a finding that she could still perform a significant number of jobs in the economy because the vocational expert testified that plaintiff could work as a custodian and that 5,000 jobs existed in Michigan and 175,000 jobs existed nationally. (Tr. 67). Therefore, the Commissioner concludes, even if the ALJ improperly considered the dishwasher position, any error is harmless because he still identified a significant number of jobs that plaintiff could perform.

Finally, the Commissioner argues that while plaintiff asserts that she could not work as a custodian because Dr. Brady found that she would have a "marked" limitation on her ability to respond appropriately to usual work situations and changes in a routine work setting, as the Commissioner argued above, the ALJ reasonably discounted Dr. Brady's opinion because it was internally inconsistent. (Tr. 33). The Commissioner asserts that, indeed, Dr. Brady concluded elsewhere in his opinion that plaintiff was "able" to deal with normal workplace stressors. (Tr. 497). Therefore, the Commissioner concludes, the ALJ was not required to include this restriction in his hypothetical question to the vocational expert. The

16

Commissioner therefore argues that substantial evidence supports the ALJ's decision, and it should be affirmed by the Court.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

19

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

**B.    Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

inability to engage in any substantial gainful activity by

20

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

   "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

   If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis

#### 1.    The hypothetical question and accompanying RFC accurately portray plaintiff's mental impairments

Plaintiff's first claim of error is that the ALJ's RFC and accompanying hypothetical question posed to the vocational expert do not accurately portray plaintiff's actual mental impairments.[1]  Specifically, plaintiff complains that the following portion of the RFC does not accurately portray plaintiff's mental impairments:

> She has the ability to understand, remember, and carry out simple instructions and perform s[imple] tasks with no production pace work, bur rather goal-oriented work, meaning no down the line coworker depending on her for items.  She must have no more than occasional interaction with the public or coworkers.

(Tr. 21).  Plaintiff argues that this portion of the ALJ's RFC did not account for the opinion of Dr. Brady, a consultative examiner who evaluated plaintiff in October 2011 and opined, in part, that plaintiff was "marked[ly]" limited in the ability to respond appropriately to usual work situations and to changes in a routine work setting.  (Tr. 492).  Plaintiff contends that the ALJ did not provide a viable explanation as to why this factor was not included in the RFC.  Plaintiff

---

[1] Plaintiff only challenges the ALJ's findings with respect to her depression and mental impairments, but does not challenge the ALJ's findings with respect to her physical impairments.

further asserts that when this factor was posed in a hypothetical question to the vocational expert, the expert testified that it would be work preclusive. (Tr. 69-70). The Commissioner responds that the ALJ appropriately gave Dr. Brady's opinion limited weight because it was not consistent with the medical evidence of record as a whole and because the opinion was internally inconsistent.

In order for a vocational expert's testimony to constitute substantial evidence that a significant number of jobs exists, "the [hypothetical] question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). A hypothetical question is not required to list all of plaintiff's medical conditions, but is only required to reflect his limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). A claimant's RFC is an assessment of "the most [the claimant] can still do despite . . . limitations . . . based on all the relevant evidence in [the] case record." *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 Fed. Appx. 411, 413 n.2 (6th Cir. 2012) (quoting 20 C.F.R. § 416.945(a)(1)). Thus, "a hypothetical question need not incorporate a listing of the claimant's medical conditions, [so long as] the vocational expert's testimony . . . take[s] into account the claimant's functional limitations, i.e., what he or she 'can and cannot do.'" *Infantado v. Astrue*, 263 Fed. Appx. 469, 476 (6th Cir. 2008) (citation omitted).

The ALJ here thoroughly outlined the record evidence in this case, at

24

length, including the October 2011 opinion of Dr. Brady.  (Tr. 22-33).  Dr. Brady

opined in his Psychiatric/Psychological Medical Report that:

> [Plaintiff's] ability to relate and interact with others,
> including coworkers and supervisors, is impaired.  Her
> depression and distress could affect her interpersonal
> relationships in the workplace.  Her ability to
> understand, recall, and complete tasks and expectations
> is a bit impaired.  She is able to perform simple tasks
> with no major limitations but will likely struggle with
> tasks that have multiple steps and increased complexity.
> Her ability to maintain concentration was fair.  She
> appears able to deal with normal workplace stressors
> appropriately or adaptively.

(Tr. 497).[2]  Dr. Brady also completed a check-box Medical Source Statement of

Ability to do Work-Related Activities (Mental), in which he indicated that

plaintiff was moderately limited[3] in her ability to carry out simple and complex

instructions, to make judgments on simple work-related decisions, and to interact

appropriately with the public, supervisor and co-workers, and was markedly

---

[2] In this case, no treating source provided an assessment related to plaintiff's work-related limitations or opined that plaintiff was disabled.  However, Bruce Douglass, Ph.D., prepared a mental residual functional capacity assessment of plaintiff in December 2010, where he opined that plaintiff retained the capacity to perform routine, two-step tasks on a sustained basis, but that she would work best alone or in small groups.  (Tr. 87-88).  The ALJ explained that she gave considerable weight to this assessment, finding this opinion well supported by the medical evidence of record, including the evidence received at the hearing level.  (Tr. 32).  Plaintiff does not challenge the ALJ's reliance on Dr. Douglass's assessment, and indeed, an ALJ can properly rely on the conclusions of a non-examining, record reviewing physician to support an RFC assessment.  *See Hischback v. Colvin*, 2013 WL 6147883, at *3 (S.D. Ohio Nov. 22, 2013) (citations omitted).

[3] A "moderate" limitation means "[t]here is more than a slight limitation in this area but the individual is still able to function satisfactorily."  (Tr. 491).

limited in her ability to understand and remember complex instructions, in her

ability to make judgments on complex work-related decisions, and in her ability to

respond appropriately to usual work situations and to changes in routine work

setting.  (Tr. 491-92).  The ALJ explained his rationale for giving limited

probative weight to Dr. Brady's opinion, as follows:

> The undersigned accords limited probative weight to the
> medical source statements of Dr. Brady, as they are not
> fully consistent with the medical evidence of record,
> including his own examination findings.  Although he
> assessed the claimant would have poor social composure,
> Dr. Brady noted only moderate limitations in her ability
> to interact with others.  Additionally, the claimant
> reported she is able to interact with her boyfriend and
> stepmother, use public transportation, get along with
> authority figures, and have several close friendships.
> Although Dr. Brady assessed the claimant would have
> marked limitations in her ability to respond appropriately
> to work situations and changes in a work setting, in his
> examination findings, he noted she appeared able to deal
> with normal workplace stressors appropriately or
> adaptively.  Dr. Brady opined the claimant would have
> moderate limitations in regards to simple instructions
> and marked limitations in understanding and
> remembering complex instructions; however, he noted
> claimant's concentration was fair and, in his initial
> report, that she would have no major limitations with
> simple tasks.  Additionally, the record shows the
> claimant reported that she was able to read, watch
> television, and handle money.  During evaluations in
> December 2010 as well as April, May, and November
> 2011, the claimant presented with normal memory.  In
> September 2011, she did well on testing for memory,
> attention, and concentration with normal concentration
> observed in November 2011.

(Tr. 33 (internal record citations omitted)).

The undersigned suggests that the ALJ's RFC, and accompanying hypothetical question to the vocational expert, is supported by substantial evidence. Contrary to the plaintiff's assertion otherwise, the ALJ properly considered whether plaintiff could interact with her boyfriend and family members as a reason to discount Dr. Brady's statements that plaintiff was impaired in her ability to interact with others, because the regulations direct the ALJ to consider whether a medical opinion is consistent with the record as a whole. The ALJ further properly noted that Dr. Brady noted only moderate limitations in her ability to interact with others (which means that plaintiff is still able to function satisfactorily), and that plaintiff uses public transportation, gets along with authority figures, and has several close friendships. (Tr. 33). And, contrary to plaintiff's contention, the ALJ properly gave weight to plaintiff's testimony that she was able to get along "very well" with authority figures, even though plaintiff's friend noted in the Third Party Adult Function Report that plaintiff's ability to get along with authority figures was "poor." As the Commissioner correctly noted, plaintiff is essentially arguing that her own statements are not fully credible and should be discounted. However, it is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir.

27

2007) (citations omitted).  The ALJ's credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  The undersigned suggests that the ALJ reasonably gave more weight to the plaintiff's own description of her ability to get along with authority figures, rather than that of a third party.  Further, Dr. Brady reported that throughout the evaluation, plaintiff was cooperative and attentive, her thoughts were spontaneous and well organized, she had a fair ability to maintain concentration, and she denied any hallucinations or suicidal ideation (Tr. 494-96), and the ALJ noted that the record shows that plaintiff was able to read, watch television, and handle money, and that plaintiff did well on testing for memory, attention, and concentration. (Tr. 33).  And, the ALJ considered plaintiff's reported activities of daily living, including that she spent time watching television and using the computer, washed dishes, with breaks, sometimes prepared meals and performed household chores, did not have a problem caring for her personal needs, although she sometimes required prompts, and that plaintiff reported in September 2011 that she worked most of the time helping her boyfriend, stating she worked until seven p.m.  (Tr. 31).

    As for plaintiff's contention that the ALJ had a duty to recontact Dr. Brady to get further clarification of his opinion, the Commissioner correctly notes that plaintiff has not provided any authority that would require an ALJ to recontact a

consulting physician (as opposed to a treating physician).  *See, e.g.*, SSR 96-5p, 1996 WL 374183, at *2 (1996).  Even under SSR 96-5p, an ALJ should make reasonable efforts to contact a treating physician for clarification only "when 'the evidence does not support a treating source's opinion . . . and the adjudicator cannot ascertain the basis of the opinion from the record.'"  *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (quoting SSR 96-5p, 1996 WL 374183, at *6).  But the ALJ's recontact obligation is triggered "only when the information received is *inadequate* to reach a determination on claimant's disability status, not where . . . the ALJ rejects the limitations recommended by that physician."  *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) (emphasis added).

Here, the ALJ assigned limited weight to Dr. Brady's opinion because it was internally inconsistent and inconsistent with the record evidence, not because the basis of his assessment was unclear.  "Rejecting the limitations as inconsistent with objective evidence amounts to a decision on the merits of the claim; it does not imply a circumstance that triggers the ALJ's duty to recontact the treating sources."  *Burnett v. Comm'r of Soc. Sec.*, 2012 WL 3870362, at *5 (E.D. Mich. Sept. 6, 2012) (citing *Ferguson*, 628 F.3d at 274 (finding ALJ's recontact obligation not triggered where "Dr. Erulkar's opinion was deemed unpersuasive not because its bases were unclear, but because they were not corroborated by

objective medical evidence")).  "The ALJ has discretion to determine whether additional evidence is necessary." *Ferguson*, 628 F.3d at 275.  Here, the ALJ's comprehensive opinion demonstrates that she carefully considered the entire record in this case, including Dr. Brady's opinion; that she identified substantial evidence supporting the determination that plaintiff was not disabled; and that she did not abuse her discretion is failing to recontact Dr. Brady, because the bases for his opinion were not clear or ambiguous.  Accordingly, plaintiff's first claim of error should be denied.

> **2.    The ALJ's Step Five determination is supported by substantial evidence**

At the hearing, the vocational expert testified that a person with plaintiff's vocational background and functional limitations could work as a custodian (DOT Code 323.687-014) and a dishwasher (DOT Code 316.684-014).  Based on this testimony, the ALJ found that plaintiff could perform a significant number of jobs in the economy and thus was not disabled.  Plaintiff argues that the vocational expert's testimony in response to the ALJ's hypothetical question was inconsistent with the DOT because the DOT code for the dishwasher position cited by the vocational expert at the hearing actually corresponds instead to a deli cutter-slicer position.  Plaintiff further argues that the DOT describes the dishwasher position as requiring medium to heavy level exertion, which would exceed plaintiff's RFC

for a limited range of light level work.[4]

Plaintiff's second claim of error fails.  The undersigned notes that the ALJ asked the vocational expert if his testimony was consistent with the descriptions and definitions provided for in the DOT, and the vocational expert responded that it is.  (Tr. 69).  And, plaintiff's attorney questioned the VE at the conclusion of the ALJ's questioning, and thus had the opportunity to obtain more detail or clarification about the positions identified if needed, but chose not to do so.  (Tr. 69-70).  Plaintiff therefore waived any argument she may otherwise have had regarding the vocational expert's testimony.  As the Sixth Circuit explained in *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. Appx. 163 (6th Cir. 2009), "the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p.  This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  The fact that plaintiff's counsel did not do so is not grounds for relief." *Id.* at 168-69.  Even if an inconsistency did exist between plaintiff's RFC and the

---

[4] Plaintiff also makes a conclusory statement that the position of custodian cannot be performed due to Dr. Brady's restriction of a "marked" ability to respond appropriately to usual work situations and changes in a routine work setting.  Issues such as this, "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" are deemed waived.  *See Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (internal quotation marks omitted).  However, even if plaintiff has adequately developed this argument it, would fail because, as discussed above, the ALJ's opinion discounting Dr. Brady's opinion because it was internally inconsistent and inconsistent with the record evidence, is supported by substantial evidence.

occupational requirements of the positions identified by the VE, as the Sixth

Circuit's *Lindsley* decision makes clear, the ALJ is under no obligation to

investigate the accuracy of the VE's testimony beyond the inquiry mandated by

SSR 00-4p. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009)

(holding that the ALJ fulfilled his duties when he asked the VE whether there was

any "discrepancy between your opinions and the DOT standards," even if the VE

did not disclose a conflict); *see also Beinlich*, 345 Fed. Appx. at 168-69 ("Even if

there were an inconsistency, the plaintiff has not pointed to any authority that the

ALJ erred in his findings based on the VE's testimony, which went unchallenged

by the plaintiff until after the ALJ issued his decision.").  Because the ALJ  here

specifically asked the vocational expert if his testimony was consistent with the

DOT and the uncontradicted testimony of the VE indicated that no conflict

existed, the ALJ did not err by relying on such testimony in finding other jobs

plaintiff could perform.  *See Lindsley*, 560 F.3d at 606.

Further, that the DOT lists the dishwasher position as requiring medium to

heavy level exertion does not render the ALJ's finding unsupported by substantial

evidence.  The Sixth Circuit has held that "the ALJ and consulting vocational

experts are not bound by the [DOT] in making disability determinations because

the Social Security regulations do not obligate them to rely on the [DOT]

classifications." *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding

that the ALJ did not err in evaluating the testimony of a VE when the VE testified that skilled occupations were available to an unskilled claimant).  "Further, an ALJ 'may rely on the testimony of [a VE] even if it is inconsistent with the job description set forth in the [DOT].'"  *Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995) (ALJ properly relied on vocational expert's testimony describing certain jobs as "sedentary," even though the DOT classified the jobs as "light" or "medium").  The Sixth Circuit has explained that because "not all occupations are included in the DOT and the VE may use terminology that differs from the terms used in the DOT . . . the mere fact that the DOT does not list occupations with those precise terms does not establish that they do no exist." *Beinlich*, 345 Fed. Appx. at 168; *see also* SSR 00-4p ("The DOT contains information about most, but not all, occupations.").  "[N]either the DOT or [the VE's testimony] automatically trumps when there is a conflict."  *Wright*, 321 F.3d at 616; SSR 00-4p.  Thus, the fact that the job titles to which the vocational expert testifies does not line up perfectly with the DOT does not render the vocational expert's testimony inconsistent with the DOT as a whole.  *See Lindsley*, 560 F.3d at 605.

Finally, as the Commissioner correctly argues, even if this Court were to find that plaintiff could not work as a dishwasher, substantial evidence supports a finding that she could still perform a significant number of jobs in the economy.

*See Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir. 2008) ("[A]lthough the groundskeeper, flower-picker, and dog-bather jobs might indeed require skills and emotional maturity greater than those possessed by the claimant, substantial evidence in the record indicates that the plaintiff could still perform the necessary functions of the [other jobs identified]."); *Martin v. Comm'r of Soc. Sec.*, 170 Fed. Appx. 369, 374 (6th Cir. 2006) (where two positions conflicted with the DOT but a third one did not, the third position (consisting of 870 jobs) alone was substantial evidence in support of the ALJ's decision); *see also Anderson v. Comm'r of Soc. Sec.*, 406 Fed. Appx. 32, 35 (6th Cir. 2010) (finding that fewer than 1000 regional jobs can be a significant number of jobs to determine whether a claimant is disabled); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (1,350 positions were a significant number of jobs).  Therefore, the ALJ here did not err in relying on the testimony of the vocational expert at Step 5 of the sequential evaluation, *see Wilson v. Comm'r of Soc. Sec.*, 2011 WL 2607098, at *6 (E.D. Mich. July 1, 2011), and plaintiff's second claim of error should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

35

Date: January 17, 2014                    s/Michael Hluchaniuk
                                          Michael Hluchaniuk
                                          United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 17, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Lewis M. Seward, Derri T. Thomas, Niranjan Emani and Commissioner of Social Security.

                                          s/Tammy Hallwood
                                          Case Manager
                                          (810) 341-7887
                                          tammy_hallwood@mied.uscourts.gov